# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 97 C 7515 | **DATE** | 10/28/2003 |
| **CASE TITLE** | Abbott Laboratories vs. Torpharm, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Motion hearing held. Status hearing set for 1/14/04 at 9:00 a.m. For the reasons stated in the attached Memorandum Opinion and Order, the Court finds that manifest injustice will not result if Torpharm is not allowed to amend to final pretrial order. Torpharm's motion to amend pretrial order entered on 9/13/00 [232-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 29 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 242 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| copy of order given in court hmb7 | courtroom deputy's initials | 03 OCT 28 PM 2:59 | OCT 29 2003 date mailed notices | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ABBOTT LABORATORIES, an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> TORPHARM, INC., a Canadian corporation, APOTEX, INC., a Canadian corporation, and APOTEX CORP., a Delaware corporation, <br><br> Defendants. | No. 97 C 7515 <br><br> Judge Charles R. Norgle, Sr. <br> Magistrate Judge Nan R. Nolan <br><br> DOCKETED <br> OCT 2 9 2003 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Abbott Laboratories ("Abbott") sues Defendants TorPharm, Inc., Apotex, Inc., and Apotex Corporation ("TorPharm") for patent infringement. TorPharm seeks to market a generic version of Abbott's DEPAKOTE®, an anti-seizure medication. TorPharm now moves to amend the final pretrial order (the "FPTO") entered on September 13, 2000 to add new documentary evidence and expert witnesses and to reopen discovery on the new evidence and witnesses for an appropriate amount of time. For the following reasons, TorPharm's motion is denied.

## BACKGROUND

This case has been pending for six years. The complaint was filed on October 24, 1997. Substantial discovery occurred. The parties exchanged tens of thousands of documents, propounded and responded to numerous sets of interrogatories, and conducted approximately 30 depositions. Fact discovery closed on February 24, 2000 after two extensions.[1] Expert discovery was completed shortly thereafter. TorPharm did not seek an additional extension of the discovery deadlines to retain

---

[1] See March 1, 1999 minute order (setting close of fact discovery for June 25, 1999); May 21, 1999 minute order (extending fact discovery deadline until November 16, 1999); and July 14, 1999 minute order (extending fact discovery deadline until February 24, 2000).

new experts or conduct further testing.

During discovery, Abbott designated two experts to testify a trial, and TorPharm designated three experts. Each expert issued a report and was deposed. Abbott's experts determined the physical and chemical properties of TorPharm's product through scientific testing and analysis. Abbott's experts opined that TorPharm's proposed product is an oligomer with a 1:1 molar ratio of sodium valproate and valproic acid. TorPharm retained three expert witnesses to rebut the testimony of Abbott's experts. TorPharm did not ask its experts to perform any scientific testing. Instead, TorPharm had its experts challenge certain aspects of the tests performed by Abbott's experts and opine that Abbott's proof was not sufficient to demonstrate that TorPharm's product is an oligomer. TorPharm's experts did not offer any opinion relating to the tests performed by Abbott's experts demonstrating the 1:1 molar ratio of TorPharm's product.

Abbott filed for summary judgment on April 7, 2000, arguing, among other things, that there was no genuine dispute of material fact that TorPharm's proposed product infringed Abbott's patents. A comprehensive pretrial order was entered on September 13, 2000. On March 30, 2001, Judge Norgle ruled that Abbott's patents were infringed and not invalid and unenforceable and granted summary judgment in favor of Abbott. The summary judgment proceedings considered the description of TorPharm's product found in its proposed package insert. TorPharm appealed. On August 13, 2002, the Federal Circuit Court of Appeals affirmed the district court's finding that the patents are not invalid and unenforceable. The case was remanded for further proceedings consistent with the Federal Circuit's finding that a dispute of material fact exists with respect to the oligomeric structure of TorPharm's product.

By letter dated May 31, 2001, the Food and Drug Administration ("FDA") notified TorPharm that:

> We have completed review of this abbreviated application and have concluded that, based on the information you have presented to date, the drug is safe and effective for use as recommended in the submitted labeling. Therefore, the application is tentatively approved.

Abbott's Memorandum, Ex. L at 1. On December 6, 2002, TorPharm submitted to FDA a proposed amendment to the ANDA in which TorPharm sought revised labeling for its proposed product. On March 21, 2003, FDA rejected the proposed labeling changes contained in TorPharm's December 6, 2002 submission. On June 20, 2003, TorPharm submitted another set of revised labeling to FDA. FDA has not responded to TorPharm's June 20, 2003 proposed amendment.

TorPharm now seeks permission to modify the pretrial order in order to introduce into evidence the December 2, 2002 and June 20, 2003 amendments to its Abbreviated New Drug Application ("ANDA") for divalproex sodium, as well as the testimony of the experts upon whose findings the amendments are based. Abbott requests that the Court deny the motion because TorPharm has not met the "stringent standard" necessary to amend the final pretrial order. Alternatively, Abbott requests the Court to defer consideration of whether to admit some or all of the evidence relating to TorPharm's proposed changes to its ANDA until FDA determines whether to accept those changes.

TorPharm claims that the ANDA amendments and the new evidence contained in the ANDA amendments are highly relevant to the oligomeric structure issue on remand. TorPharm believes that the chemical depiction of divalproex sodium used in its original ANDA is incorrect. TorPharm's ANDA amendments seek to change the chemical depiction of divalproex sodium. TorPharm states that its ANDA amendments include tests demonstrating that its divalproex sodium lacks the

purported oligomeric structure that might be suggested by the formula depicted in its proposed package insert. TorPharm's ANDA amendments contain the expert reports of three chemistry professors. TorPharm states that it asked each of these experts to conduct tests to determine whether the molecular structure of divalproex sodium is or is not oligomeric. The experts concluded:

> - that TorPharm's divalproex sodium product "is not a distinct equimolar compound ... resulting from a 'reaction,' but is simply a solution of sodium valproate in valproic acid, with the 1 to 1 ratio having been arbitrarily selected." (6/1/03 Expert Report of McClelland);
>
> – that the combination of sodium valproate and valproic acid gives "only a solid mixture of the two components [] which can be equimolar or of different compositions." (11/6/02 Expert Report of Prof. Olah);
>
> - that "divalproex sodium cannot be an oligomer or a 'coordination compound' (in other words a defined chemical compound) as claimed by Abbott[]" and that Abbott's labeling of divalproex sodium is "incorrect and misleading." (11/6/02 Expert Report of Prof. Olah);
>
> – that divalproex sodium is not an oligomer, but rather is a complex crystalline product, and that "[t]he existence of an ordered complex with mole ratio 1:1 may not be interpreted as the existence of oligomers comprised of valproic acid and sodium valporate in mole ratio 1:1." (6/4/03 Expert Report of Cima).

TorPharm maintains that based on the above expert conclusions, it is likely that TorPharm will be able to establish to FDA and at trial that the chemical depiction of TorPharm's divalproex sodium is incorrect and that TorPharm's product is not an oligomer.

## DISCUSSION

The parties agree that Federal Rule of Civil Procedure 16 governs the resolution of TorPharm's motion. Rule 16(e) provides that a pretrial order can be "modified only to prevent manifest injustice." The Seventh Circuit has noted that "all the circuits that have reached this issue agree that a trial court may properly exclude evidence or theories not raised in a pretrial order absent an abuse of discretion." Gorlikowksi v. Tolbert, 52 F.3d 1439, 1444 n.3 (7th Cir. 1995). A trial court

should consider the following four factors in determining whether to permit a party to modify a pretrial order: (1) the prejudice or surprise to the opposing party; (2) the ability of the opposing party to cure the prejudice; (3) the extent to which allowing the amendment of the pretrial order would disrupt the orderly and efficient trial of the case; and (4) any bad faith in the moving party failing to adhere to its pretrial representation. Smith v. Rowe, 761 F.2d 360, 365 (7th Cir. 1985).[2] Upon consideration of the above factors and the history of this case, the Court finds that TorPharm has not demonstrated that amendment of the pretrial order is necessary to prevent manifest injustice.[3]

As to the first factor, TorPharm states that it timely produced both of the ANDA amendments

---

[2] The parties further agree that the question of whether TorPharm should be allowed to amend the pretrial order to add new documentary evidence and expert witnesses is a procedural matter not unique to patent law, and therefore this court applies regional circuit law.

[3] The Hatch-Waxman Act does not mandate admission of TorPharm's requested ANDA amendments and the scientific evidence submitted in the two amendments. Drug manufacturers are bound to sell only those products that comport with the ANDA's description of the drug. Abbott Labs. v. TorPharm, 300 F.3d 1367, 1373 (Fed. Cir. 2002). Thus, the primary focus in litigation under the Hatch-Waxman Act is whether the product that is likely to be sold upon FDA approval of the ANDA would infringe any valid patent. Bayer AG v. Elan Pharm. Research Corp., 212 F.3d 1241, 1249 (Fed. Cir. 2000). Because the rejected December 2002 amendment and the currently unapproved June 20, 2003 submission do not aid an analysis of whether the final product to be marketed by TorPharm will infringe, the version of TorPharm's ANDA that was approved in 2001 should be the focus of the inquiry at trial. If FDA decides to accept TorPharm's June 20, 2003 proposed amendment and approve the ANDA in a different form, then TorPharm may, if it wishes, file an appropriate motion at that time.

With respect to the evidence contained in its ANDA amendments, TorPharm argues that such evidence goes to the issue of the molecular structure of the drug product that TorPharm is likely to market and is admissible at trial, regardless of whether the FDA changes the chemical depiction. TorPharm similarly points out that even if FDA does not agree with TorPharm's scientific evidence, the Federal Circuit has acknowledged that the trier of fact may consider evidence that may contradict clear representations of the ANDA. The question of whether the evidence contained in TorPharm's unapproved ANDA amendments should be included in the pretrial order is determined by the principles and policies underlying Rule 16. The Federal Circuit has not held that evidence contradicting representations in the ANDA is automatically admissible regardless of whether it was produced in a timely manner.

to Abbott and Abbott cannot be surprised by evidence which it has well in advance of trial. TorPharm argues that the absence of prejudice or surprise in this case is demonstrated by the facts concerning the timing of TorPharm's motion to modify the pretrial order and Abbott's awareness of the evidence and TorPharm's intention to introduce the evidence at trial. TorPharm emphasizes that it first raised the issue of an incorrect chemical depiction in draft labeling submitted with a major amendment to the ANDA on January 12, 2000, which was before fact and expert discovery closed and months before Abbott filed its motion for summary judgment. TorPharm points out that Abbott was aware from the time of oral argument in the Federal Circuit that TorPharm intended to "continue its efforts in the FDA to change the incorrect chemical depiction." TorPharm Reply at 6. Finally, TorPharm states that Abbott's claim of surprise and prejudice is undermined by the fact that in a January 13, 2002 Agreed Status Report filed in this case, the parties indicated that: "TorPharm has informed Abbott of its intention to attempt to introduce at trial certain evidence that was first disclosed to Abbott in December 2002. Abbott objects, and will respond appropriately."

TorPharm has not shown that it exercised diligence in pursuing the evidence upon which it bases its motion. TorPharm did not seek to include this evidence in the record until after discovery had been closed for more than three years, the pretrial order had been on file for almost three years, summary judgment had been ruled on, and the Federal Circuit had remanded the matter for trial on one factual issue. TorPharm neglects to satisfactorily explain why this new evidence could not have been developed and made part of this case in a timely manner. TorPharm does not address why its experts could not have conducted tests to determine whether the molecular structure of divalproex sodium is or is not an oligomer during the discovery period. In fact, one of the reports from Dr. Robert McClelland contained in TorPharm's December 6, 2002 ANDA amendment is dated May 9,

1998, but this report was never disclosed to Abbott during discovery. Given the late stage in this litigation, TorPharm's delay in seeking to include additional documentary evidence and expert witnesses in the record has not been justified.

TorPharm also argues that there is more than sufficient time for the parties to conduct additional discovery prior to trial. TorPharm ignores the fact that Abbott would be seriously prejudiced if TorPharm's proposed amendment is allowed by having to conduct significant and costly additional discovery. Abbott would need substantial discovery to explore and counter TorPharm's new scientific evidence. Abbott contends that if TorPharm is allowed to amend the final pretrial order to add new expert witnesses and their reports, the parties would be "thrust back into full-blown discovery." The Court agrees. If the proposed amendment is allowed, Abbott would have to depose TorPharm's new experts about their testing and retain one or more experts to evaluate TorPharm's testing and to prepare a rebuttal. TorPharm would want to discover Abbott's experts' opinions and depose Abbott's expert(s). Each side would then seek to introduce this new evidence at trial, requiring another substantial amendment to the pretrial order. Abbott would be prejudiced by having to conduct significant additional discovery after litigating this matter for more than six years, through summary judgment and appeal.[4]

Regarding the second factor, TorPharm argues that Abbott can cure any prejudice by discovering the opinions of the new witnesses set forth in the two ANDA amendments. This

---

[4] TorPharm claims that the hardship that would be imposed on TorPharm from the denial of its motion would be severe because TorPharm would be forced to defend the issue of infringement based on what the scientific evidence filed in TorPharm's ANDA amendments shows is an incorrect chemical depiction for its product. The Court finds that any prejudice to TorPharm from proceeding to trial on the basis of the ANDA as approved by FDA in 2001 is minimal. Because the approved version of the ANDA is controlling unless and until the FDA agrees to change it, no harm would result from denying TorPharm's request to amend the pretrial order to introduce evidence the FDA has not accepted.

argument assumes that the district court would allow Abbott time to depose TorPharm's new expert witnesses, conduct related document discovery, and retain its own experts to prepare reports to rebut TorPharm's new evidence. The time for discovery expired long ago. This Court does not believe that after years of substantial discovery, a ruling on summary judgment, and a ruling on appeal, discovery should be reopened at this advanced stage of the litigation for the purpose of discovering information that could have been made a part of the case years ago. Scopia Mortgage Corp. v. Greentree Mortgage Corp., 184 F.R.D. 526, 531 (D.N.J. Nov. 17, 1998) (stating that [t]o suggest that every attempt to reopen discovery and to add subjects to the Joint Final Pretrial Order can be accommodated by again enlarging the pretrial period is to suggest that the end of the litigation process is of no practical consequence to the adversary and to the court's schedule. After four years, enough is enough.").

Moreover, allowing Abbott to take additional discovery will not completely cure the prejudice caused by an amendment to the pretrial order at this late date. A critical part of the prejudice to Abbott will be the substantial time and expense required to conduct discovery about the new scientific evidence. Granting Abbott additional preparation time to undertake the work necessary to discover and rebut TorPharm's evidence would result in substantial litigation costs and delay in moving Abbott's claims to trial.

Although no trial date has been set, allowing TorPharm to amend the pretrial order and introduce new expert witnesses and scientific testing will disrupt the progress of this action toward trial. This action has been pending since 1997. The parties have developed a detailed record, discovery extensions were sought and granted, and discovery has been closed for three and a half years. This case has been remanded for trial on the limited issue of the whether TorPharm's

proposed product is an oligomer, and reopening expert discovery will significantly delay a trial on this issue.

Finally, although there is no evidence of bad faith on the part of defense counsel in seeking to amend the pretrial order at this point in the proceedings, the Court sees TorPharm's assertion of new evidence as an attempt to avoid certain rulings by Judge Norgle and the Federal Circuit. Judge Norgle and the Federal Circuit relied in part on the representations TorPharm made in the ANDA about the physical and chemical characteristics of its product. The Federal Circuit confirmed Judge Norgle's ruling that TorPharm is bound by the representations made in the proposed package insert found in its ANDA submission. TorPharm admits that the depiction of divalproex sodium contained in its originally filed ANDA "can be read in a way that implies an oligomeric structure." See 8/26/2003 Transcript of Proceedings at 4. Thus, TorPharm seeks to introduce its new scientific evidence to show that the chemical depiction of its divalproex sodium contained in the package insert in its originally filed ANDA is incorrect and TorPharm's product is not an oligomer.

TorPharm's actions also amount to a last-minute attempt to bolster its record in this case. For whatever reason, TorPharm made a strategic decision to rely on no expert testing to controvert Abbott's infringement claims. T. Barton Dep. at 51; R. Jacobson Dep. at 51-55; and D. Hercules Dep. at 33-35; see also Abbott Labs., 300 F.3d at 1375 (stating "TorPharm provided no testimony, expert or otherwise, stating that the composition of the mixture at this step in the product is preserved in the final formulation . . . ." and "Nor did TorPharm provide any evidence, such as an analysis of its final product, that would substantiate TorPharm's interpretation of the scale-up instructions, or would contradict the plain representation of a 1:1 molar ratio found in its proposed package insert."); Abbott Labs. v. TorPharm, Inc., 156 F. Supp.2d 738, 746 (N.D. Ill. 2001) (stating "Torpharm submits

no tests of its own, but presents opinion evidence to attempt to refute Abbott's testing;" "Torpharm criticizes Abbott for not performing x-ray diffraction analysis, but then neither did Torpharm;" and "Abbott conducted multiple tests on Torpharm's biobatch, which show that Torpharm's proposed product has the same repeating units claimed in the patents. Torpharm offers no evidence to rebut this finding."). Having offered no scientific testing of its own, TorPharm cannot belatedly introduce new expert testing and analysis showing that TorPharm's product is not an oligomer and does not contain a 1:1 molar ratio or the unit formula contained in Abbott's patents.

## CONCLUSION

For all of the above reasons, the Court finds that manifest injustice will not result if TorPharm is not allowed to amend the FPTO. TorPharm's motion is denied.

**ENTER:**

**Nan R. Nolan**
**United States Magistrate Judge**

Dated: 10/28/03